[No. 17505. *En Banc.* February 23, 1923.]

# THE STATE OF WASHINGTON, *Respondent,* v. BERT ORCUTT *et al., Appellants.*[1]

CRIMINAL LAW (207)—TRIAL—CONDUCT—SPECIAL COUNSEL FOR PROSECUTION—QUALIFICATIONS. The denial of a motion to dismiss a special prosecutor, on affidavits that he agreed to assist the defense and obtained knowledge of certain evidence, will be sustained where it was denied by his counter affidavit, and the trial court passed on the facts.

CRIMINAL LAW (438)—APPEAL—REVIEW—RECEPTION OF EVIDENCE. Error cannot be predicated on the exclusion of evidence that a witness could not be found for the service of a subpoena, where no prejudice was shown.

SAME (139)—EVIDENCE—HEARSAY. It is incompetent, as hearsay, to permit the wife of the accused to testify as to what accused had told her in a telephone conversation, she having testified to his return on the morning after the crime was committed.

SAME (137)—EVIDENCE—HEARSAY—DECLARATIONS BY THIRD PERSONS. Upon an issue as to an alibi, and in corroboration of the accused's story that he had a few days before written a former employer for a job, and on the day in question applied for the employment in a city some distance from the place of the crime, leaving his name and address with a clerk in the office, it is reversible error to exclude evidence that, shortly after receipt of the letter, a man had called at the office, leaving the accused's name and address, the clerk making a memorandum thereof which was shown to the employer and destroyed (HOLCOMB, J., dissenting).

Appeal from a judgment of the superior court for Clarke county, Simpson, J., entered January 31, 1922, upon a trial and conviction of robbery. Reversed.

*Henry Clay Agnew, George F. Vanderveer,* and *Ralph S. Pierce,* for appellants.

*Jos. E. Hall,* for respondent.

MACKINTOSH, J.—Appellants were jointly tried, convicted and sentenced on a charge of robbery, and appeal from the sentence thereon.

[1]Reported in 212 Pac. 1066.

On Friday, September 16, 1921, about 10 o'clock in the evening, the custodian of the Sells-Floto Circus funds was held up by three armed men, in Vancouver, Washington, and money, checks, and drafts of the value of about $35,000 taken from him. On Saturday afternoon most of the money was found near LaCenter, in the same county, buried or hidden just off the highway from Vancouver to Seattle. The discovery was reported to the office of the sheriff, and deputy sheriffs were sent to the spot, where they hid for some time. About 2 o'clock Sunday morning, September 18, a Buick automobile carrying appellants and their women folks and children, traveling south on the highway coming from Seattle to Vancouver, stopped at the south end of the cut in the highway near the place where the money was concealed. Appellants got out of the car, walked together to the north end of the cut to a low place in the bank, and walked directly to the place where the money was hidden in a satchel containing a suit of overalls belonging to appellant Moore. When challenged by the officers, they ran, were stopped by shots from the deputies and arrested. The third man involved in the robbery was never apprehended. Three of the circus employees, who were in the car held up by the robbers, testified that Moore was one of the three men who held them up, and two testified that Orcutt was another of the three. The state produced other witnesses to prove that appellants were in the vicinity of Vancouver on the night of the 15th and the day of the 16th of September. Appellants produced testimony to show that they were in Seattle on the evening of September 16.

Various assignments of error need not be noticed in this opinion for the reason that we are to grant a new trial for an error hereafter to be discussed, and

as these assignments relate to matters which will not recur on a new trial they therefore become immaterial.

The appellants' third objection to warrant a reversal is the action of the trial court in denying their motion to dismiss the special prosecutor. In support of this motion two affidavits were made, one by one of the attorneys for appellants, and the other by a relative of one of the appellants. Appellants asserted that the special prosecutor was employed to assist in their defense, and that certain evidence was imparted to him and that he agreed to assist in the defense of the appellants. These facts were denied in an affidavit of the special prosecutor, and the trial court passed upon these facts and denied the motion to dismiss the special prosecutor.

Upon this state of affairs, we cannot hold that the preponderance of evidence was to the effect that the special prosecutor had been employed and had been the recipient of confidential information, and therefore should be prohibited from acting as special prosecutor. The trial court, knowing the particulars, held to the contrary. No positive prejudice to appellants is shown as resulting therefrom. The action of the trial court must therefore be sustained. *Hicks v. Drew,* 117 Cal. 305, 49 Pac. 189; *State v. Lewis,* 96 Iowa 286, 65 N. W. 295; *State v. Hoshor,* 26 Wash. 643, 67 Pac. 386.

It is complained that the court erred in refusing the offer of appellants to prove that attorney Agnew, as attorney for appellants, had caused a subpoena to be issued and placed in the hands of the sheriff, and the sheriff had been unable to locate the witness named in the subpoena. No prejudice is shown by the rejection of the evidence offered. There is no sufficient showing that the court abused its discretion in refusing the offer of proof made.

The next error assigned is the exclusion of evidence by Mrs. Moore, wife of one of the appellants, of a telephone conversation with her husband. This witness had testified to the return of her husband on the morning of September 17, and of the matters connected with it. What her husband told her would be incompetent and hearsay testimony. The fact that it was over the telephone would not change the rule.

Error is claimed in refusing an offer to prove by a witness named Wheeler. Wheeler was a witness produced at the trial on behalf of defendants. He was a lumberman and employer of labor, residing in Portland, Oregon. Appellant Moore had testified that he had formerly worked for Wheeler about eighteen months before, and that on September 16 he went to Portland for the purpose of attempting to secure employment from Wheeler. It was shown that he had previously, on September 14, mailed a letter to Wheeler asking for work. He testified that he left Vancouver, Washington, for Portland, Oregon, about 10 or 10:45 in the forenoon, and that it took forty-five minutes to go by street car to Portland, Oregon; that, when he arrived in Portland, he went to Wheeler's office, and finding him out, directed an office employee, or stenographer of Wheeler, to make a memorandum of his call. The employee made this memorandum. Wheeler was put upon the stand and examined and asked if he knew appellant Moore. He answered that he did, that he had known him since the spring of 1919; that Moore had worked for him; that he had received a letter from Moore asking for employment. He was asked whether or not, a few days after the receipt of the letter, a young lady employee came to him with a slip of paper of the kind on which it was customary to make memoranda of such matters and told him that

Moore had been in his office. On objection that this was incompetent and irrelevant, the objection was sustained. The following offer of proof was then made:

"I offer to prove by the witness Wheeler that about the 16th of September, 1921, being a few days after the receipt of the letter which has been identified—which has been admitted in evidence as defendants' exhibit 10, the young lady clerk in his office came to him with a slip of paper on which was written the name of Roy Moore, and 'Seattle', and stated the gentleman had called and left this memorandum; that the slip of paper was burned or thrown away and cannot be produced, and this is offered as secondary proof of its contents."

It may be admitted that the offer to prove included testimony which could not be admitted; that is, any conversation between Wheeler and his stenographer, but it certainly includes testimony which was admissible—that Wheeler had received the memorandum made by the stenographer at the defendant's request and at the time that he testified it was made. It was competent as tending to corroborate the defendant's statement that he was present in Wheeler's office at the time he testified to, and certainly was not objectionable on the ground that it was hearsay—which seemed to be the reason for its exclusion in the trial court. No objection was made as to secondary evidence of the contents of the instrument; it was certainly permissible for Wheeler to testify as to what the paper contained, in view of his testimony that it was the custom to destroy memoranda of this kind and that this memorandum had been so destroyed.

Testimony of this kind may be most vital to the defendant, and it would seem to be unobjectionable under any rule of evidence.

A is charged with the commission of a crime in the city of X, at 10:30 a.m., September 16. He goes upon

the stand and testifies that he was, at 10:30 on the date charged, present in the city of Y, some distance from X; that at that hour he was present in the office of B for the purpose of leaving with B a document; that finding B not in his office, he left the document with Miss C, B's stenographer, with instructions to deliver it to B upon B's return. B is then called to the stand and testifies that, about 11 o'clock on September 16, at his office in the city of Y, a document answering the description and bearing all the earmarks of the document described by A was delivered to him by his stenographer, Miss C. Would any court hold this testimony was inadmissible as being hearsay? What Miss C may have said to B upon the delivery of the paper may not be admissible, but certainly the fact of the receipt by B of the paper testified to by A as having been left at B's office is direct, positive, firsthand, material, competent and relevant testimony in corroboration of A's statement, even though the paper may have been subsequently destroyed so that it could not be introduced in evidence.

The foreclosing of the right of the appellant to the production of such testimony has certainly deprived him of a fair trial. The fact that the memorandum was not brought into Wheeler's office and left there by the appellant with instructions to the stenographer to deliver it to Wheeler does not alter the situation from that outlined in the hypothetical case. As we have already said, the proof offered is not what the stenographer said to Wheeler, nor as to how she came to make the memorandum, nor as to Moore's presence in the office, but what she did with the memorandum; and certainly Wheeler is as competent to testify as to the fact of receiving the memorandum as she would have been, had she been on the stand, to testify to the fact

of her giving the memorandum to Wheeler. She, of course, alone would have been competent to testify as to the actual fact of Moore's presence in the office and what he said to her in regard to preparing a memorandum. Whether the jury would think the defendant should have produced the stenographer goes to the weight of the defendant's case, but certainly does not affect the admissibility of Wheeler's testimony. It seems to us that the admissibility of this disputed evidence is so manifest that it is not subject to debate.

The refusal of the court to admit the testimony under the offer was prejudicial error, entitling appellants to a new trial. For that reason the judgment is reversed, and the cause remanded with directions to grant a new trial.

MAIN, C. J., PEMBERTON, BRIDGES, and TOLMAN, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent from the decision of the majority as to the offered testimony of witness Wheeler.

It was utterly incompetent. It was not substantive proof. It was testimony as to what an employee of his told him someone purporting to be Roy Moore (who may or may not have been Moore) told her to tell Wheeler. Wheeler was in his own room and could have seen the man and no reason was given as to why he did not, nor, apparently, did the man demand to see Wheeler. The fact that a slip of paper was used to contain the name of Moore adds nothing to the competency of the offered testimony. Written statements are as much within the rule as oral. It is elementary that statements made by third persons to a witness are hearsay and inadmissible. 10 R. C. L., p. 959; 22 C. J., p. 199 *et seq.*, §§ 166, 168.

While there are exceptions to this elementary law, such as relate to dying declarations, confessions, and declarations against interest, statements as to pedigree, reputation, and testimony of a sworn witness in a former trial, former statement of a witness and the like, this comes under no exception. In fact this is as plain an example of hearsay evidence as ever seen. The hypothetical case put forth by the writer of the majority opinion is not appropriate. There, the actual presentation and receipt of a document at a given time might be some substantive evidence. But the *"direct, positive, first-hand,* material, competent and relevant testimony"* of who presented the document would most positively be the one to whom the actor presented it, *viz.,* the stenographer. So here, appellant tried to force the evidence of the wrong witness instead of the one possessing the "direct, positive, first-hand, competent and relevant evidence."

This decision, for the first time in the jurisprudence of this state, legalizes hearsay and incompetent evidence. I do more than dissent. I protest against this innovation.

The evidence produced in the trial of the case more than amply justified the verdict. They are guilty beyond a reasonable doubt, and our statute, § 1752, Rem. Comp. Stat., requires us to "disregard all technicalities and determine all causes upon the merits thereof."

There was no error justifying a reversal, and the judgment should be affirmed.