[No. 12817–5–I.   Division One.   January 27, 1986.]

MILDRED DeHAVEN, *Appellant,* v. THOMAS D. GANT, ET AL, *Respondents.*

*Robert H. Stevenson,* for appellant.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Craig P. Campbell, Carol L. Moody,* and *Philip A. Talmadge; Williams, Lanza, Kastner & Gibbs* and *Thomas H. Fain,* for respondents.

RINGOLD, J.—The plaintiff, Mildred DeHaven, appeals the judgment in her medical malpractice suit exonerating respondents Dr. Thomas Gant and Public Hospital District 2 of Snohomish County (Stevens Memorial) of liability and the dismissal with prejudice of her claim against respondent Dr. Samuel Steeves. Stevens Memorial cross–appeals the trial court's refusal to grant its motion for dismissal. We affirm.

In September 1980, DeHaven had surgery at Stevens Memorial. The surgery required removing a small portion of skin from the upper portion of her left arm and grafting that skin onto her nose. Dr. Thomas Gant performed the surgery, and Dr. Samuel Steeves was the anesthesiologist.

After surgery DeHaven began complaining of pain in her left arm and shoulder. Electromyographic studies, nerve conduction studies and exploratory surgery failed to reveal

any nerve damage attributable to the surgery performed by Gant. Dr. Sanford Wright, a neurosurgeon, recommended that DeHaven go to the University of Washington Pain Clinic to see if the pain could be controlled. While there in 1981, DeHaven was administered a Minnesota Multiphasic Personality Inventory Test (MMPI). She was never told the results nor was the test discussed with her. DeHaven failed to return to the clinic because she was offended when one interviewer asked if she had ever considered suicide.

DeHaven then consulted Dr. William Sata, a neurologist. Sata found no obvious thinking disorder and diagnosed DeHaven's condition as "causalgia," an unusual pain syndrome which follows partial injury to the nerve tissue in the shoulder or brachial plexus area. It was Sata's opinion that DeHaven's condition was caused by the improper positioning of her arm during surgery.

DeHaven filed a medical malpractice suit against Gant, Stevens Memorial and Steeves utilizing the theory of res ipsa loquitur. After trial, the court dismissed the action against Steeves finding that at no time was DeHaven, or any apparatus which may have caused DeHaven's injury, under the control of Steeves. A jury found in favor of Gant and Stevens Memorial. DeHaven appeals the judgment and dismissal.

## ADMISSION OF THE MMPI

DeHaven argues that the trial court erred in admitting the results of the MMPI administered by the University of Washington Pain Clinic.[1] She contends that the MMPI is hearsay and only admissible if it fits within a recognized exception. Relying on *Bertsch v. Brewer,* 97 Wn.2d 83, 640 P.2d 711 (1982), she maintains no exception was applicable; the admission of the MMPI was highly prejudicial, and an inadequate foundation was laid.

---

[1]DeHaven assigns error to the admission of two other MMPI's administered to her in 1975 and 1978. A review of the record reveals that these tests were not admitted into evidence. Two experts did, however, testify based in part upon the contents of these tests.

Gant responds that DeHaven's failure to make timely objection to the introduction of the MMPI into evidence precludes appellate review on the issue.

ER 103 requires all objections to be timely and specific. Failure to raise an objection at the trial court precludes a party from raising it on appeal. *Symes v. Teagle,* 67 Wn.2d 867, 873, 410 P.2d 594 (1966); *State ex rel. Partlow v. Law,* 39 Wn. App. 173, 178, 692 P.2d 863 (1984). Even if an objection is made at trial, a party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial. *State v. Guloy,* 104 Wn.2d 412, 422, 705 P.2d 1182 (1985); *State v. Boast,* 87 Wn.2d 447, 451, 553 P.2d 1322 (1976).

A review of the record reveals that prior to trial DeHaven filed a motion to limit the defendants' evidence. This motion broadly requested the court to limit defendants' evidence as follows:

(1) with respect to past medical treatment of Plaintiff consisting of written reports, medical files and records and hospital files and records for the following reasons:

(a) such records are irrelevant and not material to the issues of this case;

(b) the records are highly prejudicial to Plaintiff;

(c) the records are mainly hearsay and inadmissible.

Prior to opening statements, DeHaven's counsel asked the court to address the motion in limine. The following colloquy took place:

MR. SCHMITT: What we're concerned about, Your Honor, is that certainly past medical history is relevant, but only to the extent that it's related to what we're talking about. Much of the old records bear no relationship to the problems we're talking about here. All they go to show is that she is a woman who has a lot of medical problems. We think that's very prejudicial so to the extent that it has some relationship to this condition, well then I suppose that it would be proper, you know, that—to get it in, but it's totally unrelated—

THE COURT: I understand. I think all I can do at this point is just place a restriction that in opening statements at least that you make every effort to confine any

reference to prior medical records to those that you feel are pertinent to this case.

MR. FAIN: Yes, Your Honor.

THE COURT: I don't know—I realize that it's pretty broad but I don't know. I'm not going to go through the records and assess them all at this time.

It should be noted that the making of a pretrial motion to exclude certain evidence does not necessarily preserve any claim of error. In *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 92, 549 P.2d 483 (1976), the court held that when the evidence to be excluded was only described in a general way and the trial court indicated it was "not willing to take the responsibility of deciding sua sponte whether offered evidence was within the scope of the motion to exclude", the opponent of the evidence must object at trial to preserve the objection for appeal. Likewise, "[c]olloquy between court and counsel in chambers at the outset of the trial is not a substitute for a specific objection stating the ground of the objection." *Lappin v. Lucurell,* 13 Wn. App. 277, 292, 534 P.2d 1038, 94 A.L.R.3d 594 (1975).

DeHaven was apprised of the court's reticence to determine at the outset the admissibility of the voluminous records based upon DeHaven's general motion in limine. The court stated:

> THE COURT: I think we're talking right now about opening statements. I think there's a broader ruling I'm going to have to make as this case progresses as to what records may or may not be admissible. I'm sure that will come up as we go along, but right now for opening statements I think all I can do is just caution counsel to only refer in opening statements to those that they feel there is some real discernible connection with the current case and we'll go from there. I don't know what else you might expect me to do.
>
> . . .
>
> What you can ultimately bring in will be subject to further determination.

Since DeHaven's broad motion in limine and the colloquy in chambers is insufficient in itself to preserve her

objections on appeal, this court must determine whether there are objections in the trial record sufficient to preserve the issue on appeal. The first time the MMPI results were discussed at trial was prior to the testimony of defense witness, Dr. Allen Wyler. DeHaven objected to the use of two MMPI's administered in 1975 and 1978 because of potential prejudice. No objection was raised to the use of the 1981 test results. Wyler subsequently testified that based upon the results of the three MMPI's it was his opinion that DeHaven was suffering from a hysterical conversion reaction. No further objection to the use of the MMPI's was made at this time.

Gant later moved to admit certain exhibits. Included in this motion was exhibit 30, which contained two 3–page consultation reports and the 1981 MMPI. DeHaven objected to the entire exhibit on the basis of hearsay and prejudice.

MR. STEVENSON: It does [sic] fall within the hearsay exception and not within the clear business records exception. There is no doctor here that we can cross–examine. We believe that this kind of thing, particularly this one interview, does more damage than it does help. It doesn't shed much light on the case. It is prejudicial to the effect of the plaintiff's case and one interview there is no way that we can cross–examine, is the disturbing part of the conclusions and all sorts of inferences, such as her litigation has a bearing on this. That kind of thing, and we couldn't get, if we can't get in Dr. Wright's examinations, his records, surely this shouldn't come in unless they want to call someone from the clinic and I get a chance to cross–examine.

An objection that evidence is "prejudicial" is a general objection and is of little assistance to the court. 5 K. Tegland, Wash. Prac. § 10, at 21 (2d ed. 1982). The fact that the evidence is "prejudicial to the effect of the plaintiff's case" is not sufficient to apprise the court of the error claimed. *State v. Moore,* 35 Wn.2d 106, 113, 211 P.2d 172 (1949). Since the objection is not specific, it fails to preserve the question for appellate review. *State v. Boast, supra* at

451.

DeHaven's other objection was that exhibit 30 containing the MMPI was hearsay. The general rule is that where an objection is directed toward an entire unit of evidence and the evidence offered therein is admissible in part, a ruling that the entire unit is admissible will be affirmed on appeal. *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 361, 493 P.2d 1018 (1972); 5 K. Tegland, Wash. Prac. § 10, at 24–25 (2d ed. 1982). "Where the evidence offered is admissible in part, objection must be made to the part which is inadmissible or the objection is of no avail." *Lamphiear*, at 361; *Pacific Northwest Pipeline Corp. v. Myers*, 50 Wn.2d 288, 291, 311 P.2d 655 (1957).

DeHaven objected to the admission of exhibit 30 in its entirety. At least part of the evidence contained in the exhibit was admissible under ER 803(a)(4). This court will, therefore, not entertain DeHaven's objection to its admission.

The record reveals no other objections to the admission of the 1981 MMPI. The issue was not preserved for appeal.

## TESTIMONY OF DR. WYLER

DeHaven next asserts that the court erred in allowing Dr. Wyler to state his medical opinion as to the nature of DeHaven's condition based in part on the results of the MMPI tests administered to DeHaven.

After Wyler was qualified as an expert, he testified that the exhibits he reviewed for purposes of his testimony were those reasonably relied upon by physicians in the diagnosis and treatment of patients. Included in these exhibits were the three MMPI's taken by DeHaven.

ER 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence.*

(Italics ours.)

The court did not err in allowing Wyler to testify based upon the test results.

### DISMISSAL OF DR. STEEVES

In her malpractice suit against the defendants, DeHaven relied upon the doctrine of res ipsa loquitur.

> It is clear that res ipsa loquitur can be applicable to physicians. *ZeBarth v. Swedish Hosp. Medical Center,* 81 Wn.2d 12, 499 P.2d 1, 52 A.L.R.3d 767 (1972). Whether the doctrine applies in a given situation is a question of law. *Zukowsky v. Brown,* 79 Wn.2d 586, 488 P.2d 269 (1971). Three elements are necessary for the application of res ipsa loquitur: (1) the occurrence producing the injury must be of a kind which ordinarily does not occur in the absence of negligence; (2) the injury is caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the injury–causing occurrence must not be due to any contribution on the part of the plaintiff. *Zukowsky v. Brown, supra; Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 382 P.2d 518 (1963).

*Brown v. Dahl,* 41 Wn. App. 565, 580–81, 705 P.2d 781 (1985) (quoting *Swanson v. Brigham,* 18 Wn. App. 647, 649–50, 571 P.2d 217 (1977)).

After the close of all evidence, Steeves moved for dismissal. The court granted the motion and made the following findings of fact.

> 1. That Dr. Samuel Steeves participated in surgery performed on the plaintiff, Mildred DeHaven, on September 22, 1980, as an anesthesiologist.
>
> 2. That at no time before, during or after such surgery did the defendant, Dr. Samuel Steeves, position or have responsibility or control of the plaintiff's left arm, which she claims was injured by abnormal positioning during surgery.
>
> 3. That plaintiff produced no evidence of a deviation from the standard of care by Dr. Steeves.

DeHaven contends that dismissing Steeves because he did not have responsibility or control of her arm was an error. She argues that under the doctrine of res ipsa loqui-

tur she did not have to prove the anesthesiologist's role in causing her injury in order to get the case to the jury.

Steeves counters that DeHaven has failed to assign error to the trial judge's findings of fact. These findings, therefore, become verities on appeal, *Xerox Corp. v. King Cy.*, 94 Wn.2d 284, 286, 617 P.2d 412 (1980), and this court's sole inquiry is to determine whether the findings support the conclusions of law and the judgment. *Persing, Dyckman & Toynbee, Inc. v. George Scofield Co.*, 25 Wn. App. 580, 582, 612 P.2d 2 (1980). Steeves asserts that the findings entered, taken as verities, support the judgment of dismissal.

Steeves' analysis would be correct if the results of a bench trial were being appealed. This trial, however, was to a jury. Accordingly, while the findings of fact are helpful in determining the reason for the court granting the dismissal, they were not required. CR 52(a)(1). The findings do not become verities simply because they were unchallenged on appeal.

■ Where the trial court has taken a case from the jury and dismissed a defendant based upon a challenge to the sufficiency of the evidence, the appellate court, like the trial court, interprets the evidence in the light most favorable to the nonmoving party and determines whether the trial court correctly applied the law in dismissing the action. *Hunter v. Brown*, 81 Wn.2d 465, 467, 502 P.2d 1194 (1972); *Jones Assocs. v. Eastside Properties, Inc.*, 41 Wn. App. 462, 465, 704 P.2d 681 (1985).

A review of the record in this case reveals no evidence that Steeves had any responsibility or control over DeHaven's arm during surgery. Dr. Gant admitted to positioning DeHaven's arm for surgery. The testimony of an operating room nurse further corroborates Steeves' contention that he was not involved in the positioning of DeHaven's arm. No other evidence on this issue was introduced.

■ The Supreme Court in *Miller v. Kennedy*, 91 Wn.2d 155, 588 P.2d 734 (1978) stated that:

Res ipsa loquitur is a doctrine allowing a trier of fact to draw an inference the defendant was negligent when certain circumstances are present. Where the agency or instrumentality causing the injury was in the control of the defendant, and the injury is of a type which would not ordinarily result if the defendant were not negligent, a jury may infer from the fact of the injury that the defendant was negligent. This relieves the plaintiff of the necessity of proving the defendant's actual negligent act. The doctrine does not allow the jury to infer a defendant was negligent from the fact of the injury alone, however. *The plaintiff must show the other elements were present—that is, the control by the defendant over the instrumentality,* and the nature of the injury as ordinarily resulting only from negligence.

(Italics ours.) *Miller,* at 159–60.

DeHaven failed to introduce any evidence indicating that Steeves had any control over DeHaven's arm. The only evidence offered on the issue was contrary to such a conclusion. There being no evidence to go to the jury on the issue of control by Steeves, we find the trial court was correct in dismissing Steeves.

In light of the foregoing analysis, we need not consider the cross appeal.

Affirmed.

COLEMAN and WEBSTER, JJ., concur.

Review denied by Supreme Court March 21, 1986.